UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LAWRENCE YOUNG, Individually and on Behalf :   ECF CASE
of All Other Persons Similarly Situated,     :

                               :

            Plaintiff,         :  No.: _____

                               :

       v.                   :  CLASS ACTION COMPLAINT

                               :

DOLLAR TREE STORES, INC.,       :  JURY TRIAL DEMANDED

                               :

          Defendant.        :

                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INTRODUCTION

1.    Plaintiff Lawrence Young, individually and on behalf of all other persons similarly situated, asserts claims under the Americans With Disabilities Act, New York State Human Rights Law, New York City Human Rights Law and New York State Civil Rights Law against Defendant Dollar Tree Stores, Inc.

2.    Plaintiff Young is a visually impaired and legally blind person who requires screen-reading software to read website content using his computer. The terms "blind" or "visually-impaired" refers to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3.    According to the 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4.    Plaintiff Young brings this civil rights action against Defendant Dollar Tree Stores, Inc. ("Dollar Tree" or "Defendant") for its failure to design, construct, maintain, and operate its websites www.dollartree.com and www.familydollar.com (the "Websites"), to be fully accessible to and independently usable by Plaintiff Young and other blind or visually-impaired people. Dollar Tree's denial of full and equal access to its Websites, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.    Plaintiff seeks a permanent injunction to cause Dollar Tree to change its corporate policies, practices, and procedures so that its Websites will become and remain accessible to blind and visually-impaired consumers.

JURISDICTION AND VENUE

6.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 1281, *et seq*., and 28 U.S.C. § 1332.

7.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

8.    Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Dollar Tree conducts and continues to conduct a substantial and significant amount of business in this District with many stores in the Bronx, a substantial portion of

the conduct complained of herein occurred in this District, and Dollar Tree is subject to personal jurisdiction in this District.

9.      With several Dollar Tree and Family Dollar stores located in the Bronx, Dollar Tree is subject to personal jurisdiction in this District. Dollar Tree has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury, and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers.

10.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

<u>THE PARTIES</u>

11.     Plaintiff Lawrence Young, at all relevant times, is a resident of Bronx, New York, Bronx County. Plaintiff is a blind, visually-impaired handicapped person and a member of member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the NYSHRL and NYCHRL.

12.     Dollar Tree is and was, at all relevant times herein a Foreign Business Corporation registered to do business in the State of New York with its principal executive offices in Chesapeake, VA. Dollar Tree operates Dollar Tree and Family Dollar retail variety discount stores as well as the Dollar Tree and Family Dollar websites and advertises, markets, distributes, and/or sells variety merchandise in the State of New York and throughout the United States. Dollar Tree is, upon information and belief, licensed to do business and is doing business in the State of New York.

13.    The Dollar Tree and Family Dollar retail variety discount stores constitute places of public accommodation. Dollar Tree's stores provide to the public important goods and services. Dollar Tree's stores provide to the public important goods and services. The Websites provide consumers with access to an array of goods and services including store locations and hours, information about products available online and in retail stores for purchase, purchasing items online for in store pick up, information on the "Loyalty Club," information on the "Value Seekers Club," weekly ads, return and privacy policies, promotional coupons and other goods and services.

14.    Dollar Tree's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Dollar Tree's Websites are services, privileges, or advantages of its stores.

<u>NATURE OF ACTION</u>

15.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

16.    In today's tech-savvy world, blind and visually-impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the Internet. Unless websites are designed to be read by screen-

reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

17.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

18.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

19.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

20.     Non-compliant websites pose common access barriers to blind and visually-impaired persons:

        a.      A text equivalent for every non-text element is not provided;

        b.      Title frames with text are not provided for identification and navigation;

c.      Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to its specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

Dollar Tree's Barriers on Its Websites

21.     Dollar Tree offers its Websites to the public and it offers features that should allow all consumers to access the goods and services that Dollar Tree offers about its physical locations: information on store locations and hours; information about products available online and in retail stores for purchase, purchasing items online for in store pick up; information on the "Loyalty Club;" weekly ads; return and privacy policies; promotional coupons; and other goods and services.

22.     It is, upon information and belief, Dollar Tree's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to its Websites, thereby specifically denying the goods and services that are offered and integrated with Dollar Tree's stores. Due to Dollar Tree's failure and refusal to remove access barriers to

its Websites, Plaintiff and visually-impaired persons have been and are still being denied equal access to Dollar Tree's stores and the numerous goods, services, and benefits offered to the public through the Websites.

23.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Websites on separate occasions using the JAWS screen-reader.

24.    During Plaintiff's visits to the Websites, the last occurring in May 2017, Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods, and services of the Websites, as well as to the facilities, goods, and services of Dollar Tree's physical locations in New York by being unable to learn more information on the store locations and hours, information about its products that are available online and in retail stores for purchase, special pricing offers, return and privacy policies, reward programs, promotional coupons and other goods and services.

25.    While attempting to navigate the Websites, Plaintiff Young encountered multiple accessibility barriers for blind or visually-impaired people:

a.    Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse

moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Dollar Tree customers are unable to determine what is on its Websites, browse, look for store locations and hours of operation, learn about their loyalty programs, check out Dollar Tree's programs and specials, or make any purchases;

b.    Empty Links That Contain No Text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;

c.    Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d.    Linked Images Missing Alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

Dollar Tree Must Remove Barriers to Its Websites

26.    Due to the inaccessibility of its Websites, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Dollar Tree offer to the public on its Websites. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Websites.

27.    These access barriers on the Websites have deterred Plaintiff from visiting its physical store locations, and enjoying them equal to sighted individuals because he

was unable to find the location and hours of operation of Dollar Tree's physical stores on its Websites, preventing him from visiting the locations to purchase items, and to view the items; preventing him from learning about the products; and preventing him from knowing about any promotions or sales.

28.    If the Websites were equally accessible to all, Plaintiff could independently navigate the Websites and complete a desired transaction as sighted individuals do.

29.    Through his attempts to use the Websites, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

30.    Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Websites, Plaintiff alleges that Dollar Tree has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

c.    Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff, as a member of a protected class.

31.     Dollar Tree uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

32.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

33.     Because its Websites have never been equally accessible, and because Dollar Tree lacks a corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiff seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Dollar Tree to retain a qualified consultant acceptable to Plaintiff to assist Dollar Tree in complying with WCAG 2.0 guidelines for its Websites:

a.     Train Dollar Tree's employees and agents who develop the Websites on accessibility compliance under the WCAG 2.0 guidelines;

b.     Regularly check the accessibility of the Websites under the WCAG 2.0 guidelines;

c.     Regularly test user accessibility by blind or vision-impaired persons to ensure that Dollar Tree's Websites complies under the WCAG 2.0 guidelines; and,

d.     Develop an accessibility policy that is clearly disclosed on Dollar Tree's Websites, with contact information for users to report accessibility-related problems.

34.    If the Websites were accessible, Plaintiff and similarly situated blind and visually-impaired people could independently view service items, locate Dollar Tree's store locations and hours of operation, shop for and otherwise research related products and services available via the Websites.

35.    Although Dollar Tree may currently have centralized policies regarding maintaining and operating its Websites, Dollar Tree lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

36.    Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Websites, violating their rights.

<u>CLASS ACTION ALLEGATIONS</u>

37.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Dollar Tree's Websites and as a result have been denied access to the equal enjoyment of goods and services offered in Dollar Tree's physical locations, during the relevant statutory period.

38.    Plaintiff, on behalf of himself and all others similarly situated, seeks certify a New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Websites and as a result have been denied access to the equal enjoyment of goods and services offered in Dollar Tree's physical locations, during the relevant statutory period.

39.    Common questions of law and fact exist amongst Class:

a. Whether Dollar Tree's Websites are "public accommodation[s]" under the ADA;

b. Whether Dollar Tree's Websites are "place[s] or provider[s] of public accommodation" under the NYSHRL or NYCHRL;

c. Whether Dollar Tree's Websites deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Dollar Tree's Websites deny the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

40. Plaintiff's claims are typical of the Class: the Class Members, similarly to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Dollar Tree has violated the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on its Websites so either can be independently accessible to the Class.

41. Plaintiff Young will fairly and adequately represent and protect the interests of the Class Members because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Dollar Tree has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class.

42. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over

questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

43.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 1281 *et seq.*

44.     Plaintiff Young, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

45.     The ADA provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

46.     Dollar Tree's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Its Websites are services, privileges, or advantages of Dollar Tree's stores. The Websites area service that is integrated with these locations.

47.     Under the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

48.     Under the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities,

privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

49.    Under the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

50.    The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Websites, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Dollar Tree has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

51.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL

52.     Plaintiff Young, on behalf of himself and the New York Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

54.     Dollar Tree's physical locations are in the State of New York and throughout the United States and constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). Dollar Tree's Websites are services, privileges or advantages of Dollar Tree. Dollar Tree's Websites are services that are by and integrated with these physical locations.

55.     Dollar Tree is subject to NYSHRL because it owns and operates its physical locations and the Websites. Dollar Tree is a person within the meaning of N.Y. Exec. Law § 292(1).

56.     Dollar Tree is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Websites, causing its Websites and the services integrated with its physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Dollar Tree makes available to the non-disabled public.

57.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden".

58.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

59.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Websites accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

60.     Dollar Tree's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Dollar Tree has:

a.    Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.    Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.    Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

61.    Dollar Tree has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

62.    Dollar Tree discriminates, and will continue in the future to discriminate against Plaintiff and New York Sub-Class Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Dollar Tree's Websites and its physical locations under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Dollar Tree from continuing to engage in these unlawful practices, Plaintiff and the Sub-Class Members will continue to suffer irreparable harm.

63.    Dollar Tree's actions violate the NYSHRL and Plaintiff therefore invokes his right to injunctive relief to remedy the discrimination.

64.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for every offense.

65.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

66.    Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
VIOLATION OF THE NEW YORK STATES CIVIL RIGHTS LAW

67.    Plaintiff Young, on behalf of himself and the New York Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

68.    Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

69.    N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

70.    N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

71.    Dollar Tree's New York City physical locations are sales establishments and public accommodations within the definition of N.Y. Civil Rights Law § 40-c(2). Dollar Tree's Websites are services, privileges or advantages of Dollar Tree and its Websites is a service that is by and integrated with these establishments.

72. Dollar Tree is subject to New York Civil Rights Law because it owns and operates its physical locations and Websites. Dollar Tree is a person within the meaning of N.Y. Civil Law § 40-c(2).

73. Dollar Tree is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to its Websites, causing its Websites and the services integrated with Dollar Tree's physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Dollar Tree makes available to the non-disabled public.

74. N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

75. Under NY Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the Defendant shall reside . . ."

76. Dollar Tree has failed to take any prompt and equitable steps to remedy this discriminatory conduct. These violations are ongoing.

77. Dollar Tree discriminates, and will continue in the future to discriminate against Plaintiff and New York Sub-Class Members on the basis of disability are being

directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq*. and/or its implementing regulations.

78.     Plaintiff is entitled to compensatory damages of $500 per instance, as well as civil penalties and fines under N.Y. Civil Law § 40 *et seq*. for every offense.

FOURTH CAUSE OF ACTION<br>VIOLATIONS OF THE NYCHRL

79.     Plaintiff Young, on behalf of himself and the New York Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

81.     Dollar Tree's locations are sales establishments and public accommodations within the definition of N.Y.C. Admin. Code § 8-102(9), and its Websites is a service that is integrated with its establishments.

82.     Dollar Tree is subject to NYCHRL because it owns and operates its physical locations in the City of New York and its Websites, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

83.     Dollar Tree is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Websites, causing its Websites and the services integrated with its physical locations to be completely inaccessible to the blind.

This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Dollar Tree makes available to the non-disabled public.

84.     Dollar Tree is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

85.     Dollar Tree's actions constitute willful intentional discrimination against the Sub-Class because of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Dollar Tree has:

        a.     Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

        b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

        c.     Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

86.     Dollar Tree has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

87.     As such, Dollar Tree discriminates, and will continue in the future to discriminate against Plaintiff and the Class and Subclass Members because of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of its Websites and its establishments under § 8-

107(4)(a) and/or its implementing regulations. Unless the Court enjoins Dollar Tree from continuing to engage in these unlawful practices, Plaintiff and Class Members will continue to suffer irreparable harm.

88.    As Dollar Tree's actions violate the NYCHRL, Plaintiff seeks injunctive relief to remedy the discrimination.

89.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

90.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

91.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

FIFTH CAUSE OF ACTION
DECLARATORY RELIEF

92.    Plaintiff Young, on behalf of himself and the Class and New York Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

93.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Dollar Tree denies, that its Websites contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Websites and by extension its physical locations, which Dollar Tree owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et*

*seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

94.    A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Young respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Dollar Tree from violating the ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b.    A preliminary and permanent injunction requiring Dollar Tree to take all the steps necessary to make its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Websites is readily accessible to and usable by blind individuals;

c.    A declaration that Dollar Tree owns, maintains and/or operates its Websites in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq*., N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York

d.    An order certifying the Class and Sub-Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff Young as Class Representative, and his attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

f.     Pre- and post-judgment interest;

g.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.     Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Young demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
          June 8, 2017

BRONSON LIPSKY LLP


s/ Douglas B. Lipsky
Douglas B. Lipsky
630 Third Avenue, Fifth Floor
New York, New York 10017-6705
Tel: 212.392.4772
Fax: 212.444.1030
dl@bronsonlipsky.com

Jeffrey M. Gottlieb
Dana L. Gottlieb
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
nyjg@aol.com
danalgottlieb@aol.com